Slip Op. 14- 53

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| FORD MOTOR COMPANY,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES,<br><br>        Defendant. | Before: Judith M. Barzilay, Senior Judge<br><br>Court No. 03-00115 |

**OPINION**

[Customs' Remand Results are sustained.]

Dated: May 9 , 2014

*Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP* (*Robert B. Silverman, Ned H. Marshak, Frances P. Hadfield*); Ford Motor Company, *Paulsen K. Vandevert*, of Counsel, for Plaintiff.

*Stuart F. Delery*, Assistant Attorney General; *Jeanne E. Davidson*, Director, *Amy M. Rubin*, Assistant Director, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (*Edward F. Kenny*); and Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection (*Beth Brotman*), of counsel for Defendant.

BARZILAY, Senior Judge:  This case returns to the court following a remand to U.S. Customs and Border Protection ("Customs") for further proceedings in accordance with the Federal Circuit's decision in *Ford Motor Co. v. United States*, 715 F.3d 906 (Fed. Cir. 2013) ("*Ford*").[1]  The Federal Circuit concluded that Customs failed to adequately explain why it treats

---

[1] Familiarity with the factual and procedural history of this case is presumed. *See Ford Motor Co. v. United States*, 35 CIT __, 800 F. Supp. 2d 1349 (2011); *Ford*, 715 F.3d 906.

North American Free Trade Agreement ("NAFTA") post-importation refund claims under 19 U.S.C. § 1520(d) differently for purposes of waiver depending on whether they were submitted traditionally or through the Reconciliation Program. The Federal Circuit instructed Customs to explain whether it "applies different interpretations to the statute depending on the manner in which claims for refunds are submitted." *Id.* at 917. On remand, Customs explained that the difference in treatment "is the result of the reasonable application of two different statutory schemes, one controlling the reconciliation process and the other controlling post-entry NAFTA claims only." *Customs' Remand Results*, Docket Entry No. 107 at 1 (Nov. 8, 2013) ("*Remand Results*"). Plaintiff Ford Motor Company ("Ford") maintains that Customs' explanation for treating the two classes of claims differently for purposes of waiver under § 1520(d) is an unreasonable interpretation of the statute. Ford, therefore, contends that Customs must approve all of Ford's disputed NAFTA post-importation claims and refund the duties paid by Ford with interest. The court has jurisdiction pursuant to 19 U.S.C. § 1581(a). For the reasons set forth below, Customs' *Remand Results* are sustained.

## I. BACKGROUND

Ford imported automotive parts into the United States and sought duty free entry under NAFTA. Ford did not seek preferential treatment at the time of entry and instead sought preferential treatment after entering the merchandise by filing a (traditional) NAFTA post-importation refund claim pursuant to 19 C.F.R. § 181.32. One of the requirements of a post-importation refund claim is that the importer must present certificates of origin ("COs") to Customs to demonstrate that the goods qualify for duty free treatment under NAFTA. *Id.* Ford, though, did not present the relevant COs covering the subject merchandise. Customs did not

waive this requirement as it could have under 19 C.F.R. § 181.22(d)(1). Customs, therefore, denied Ford's claim because of this deficiency. Ford protested the denial of its claim. Customs denied Ford's protest.

## II. STANDARD OF REVIEW

When Congress has "explicitly left a gap for an agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation, and any ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001) (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984); *United States v. Morton*, 467 U.S. 822, 834 (1984); APA, 5 U.S.C. §§ 706(2)(A), (D)). Moreover, "we have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer . . . ." *Id.* at 227-28 (citing *Chevron*, 467 U.S. at 844 (footnote omitted); *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 565 (1980); *Zenith Radio Corp. v. United States*, 437 U.S. 443, 450 (1978)). Accordingly, the court applies the two-step framework provided in *Chevron* to review Customs' interpretation of the statutory scheme it is entrusted to administer.

## III. DISCUSSION

In *Ford*, the Federal Circuit concluded that

> [t]he NAFTA and § 1520(d) require that COs be presented within one year of the date of importation. Customs has the power to waive this requirement, but did not do so in this case. Yet at the same time, Customs has waived the requirement to present COs for all participants in the reconciliation program. Absent a reasonable explanation, Customs may not exercise its waiver power in a manner that effectively interprets the statute in different ways for different types of post-entry refund claims.

*Ford*, 715 F.3d at 917.  The Federal Circuit provided the following remand instructions:

> The record in this case so far is inadequate to decide whether there is a reasonable explanation for treating traditional § 1520(d) claims differently than § 1520(d) claims made under the reconciliation program. It is clear that importers who participate in the reconciliation program are treated differently for purposes of waiver under § 1520(d) than those who do not. Indeed, Customs has treated Ford's traditional claims different from Ford's reconciliation program claims. The Trade Court has yet to consider whether this different treatment is simply a valid exercise of Customs' waiver authority—similar to § 181.22(d)(1)(i)-(iii)—or whether it shows that Customs applies different interpretations to the statute depending on the manner in which claims for refunds are submitted. Nor has the court considered whether Customs has a reasonable explanation for treating these classes of claimants differently. Accordingly, we remand for the Trade Court to consider these issues in the first instance. As was the case in *Dongbu*, if Customs cannot provide a reasonable explanation for the different standards, it is "free to choose a single consistent interpretation of the statutory language." 635 F.3d at 1373.

*Id.*

In the *Remand Results*, Customs provided the following explanation:[2]

> The CAFC's remand inquiry appears to be based upon the incorrect assumption that Customs' authority to waive presentation of the CO with regard to NAFTA reconciliation claims stems solely from the NAFTA and 19 U.S.C. § 1520(d). As discussed in greater detail below, the basis for this waiver stems from a wholly different set of statutes, namely, 19 U.S.C. §§ 1401(s), 1484, 1508 and 1509, which govern the reconciliation process. Thus, the fact that Customs waives the presentation of all COs in the reconciliation context, but did not grant a CO waiver to Ford in the § 1520(d) claim at issue, is not the result of two different interpretations of § 1520(d); rather, it is the result of the reasonable application of two different statutory schemes, one controlling the reconciliation process and the other controlling post-entry NAFTA claims only. As further demonstrated below, Customs' exercise of its waiver authority in the context of reconciliation and its exercise of its waiver authority in the context of § 1520(d), as set forth in the Customs regulations, are both amply justified by their respective underlying statutes. Finally, the availability of these two avenues for claiming NAFTA has the desirable effect of maximizing importers' opportunities to claim NAFTA in

---

[2] As this explanation contains detailed descriptions of many critical components of the Reconciliation Program which serve to differentiate it from the traditional post-importation claim filing process, the court believes a summary would not be particularly helpful and cites a significant portion of the remand results in this opinion.

the manner best suited to them, while providing Customs with the mechanisms for ensuring the accuracy of those claims, to the general benefit of all involved parties.

. . . .

In order to understand the significant differences between these two procedural vehicles for filing such claims, it is important to consider the legislative framework for the reconciliation program. In this regard, it is noted that Title VI, Subtitle B, of the North American Free Trade Agreement Implementation Act, Pub. L. 103-182 (December 8, 1993) established the National Customs Automation Program ("NCAP"), an automated and electronic system for the processing of commercial importations. "Reconciliation," a component of NCAP, was codified into law under new subsection (b) of section 484 of the Tariff Act of 1930, 19 U.S.C. § 1484(b), and defined in 19 U.S.C. § 1401(s) as ". . . an electronic process, initiated at the request of an importer, under which the elements of an entry . . . that are undetermined at the time the importer files or transmits the documentation or information required by section 1484(a)(1)(B) of this title . . . are provided to the Customs Service at a later time . . . ."

Reconciliation is designed to reduce the administrative burden of making adjustments to entries by establishing an electronic process whereby an importer may identify an entry, and later provide information that was indeterminable at the time the identified entry was filed. The information which may be provided later, once it is determined, includes valuation, classification, HTSUS heading 9802 eligibility, and NAFTA. *See* "Modification of National Customs Automation Program Test Regarding Reconciliation," published in 62 FR 51181 (September 30, 1997) and "Revised National Customs Automation Program Test Regarding Reconciliation," published in 63 FR 6257 (February 6, 1998). *See also*, 1993 U.S.C.C.A.N. 2686, House Rpt. (Ways and Means Committee) No. 103-361(I), H.R. 3450, P.L. 103-182 (North American Free Trade Agreement Implementation Act), Sec. 637, indicating that "[t]he introduction into the law of two new provisions, the import activity summary statement and the reconciliation, will permit importers and customs brokers which are capable of interacting with Customs in an electronic mode to handle Customs transactions in a more business-like way, reducing paperwork and many of the administrative costs." One reconciliation entry may provide the missing information for up to 9,999 previously identified original entries, thus providing great efficiencies in the submission and processing of the newly determined information.

In the context of NAFTA eligibility, the undetermined entry information is whether the merchandise qualifies for a preferential tariff rate under NAFTA. If the importer believes that its goods may be NAFTA eligible, it flags the entry summary to indicate that it may make a NAFTA claim via reconciliation. Once determining whether the goods in the original entry qualify for NAFTA, the importer then files a reconciliation entry indicating whether or not the goods in the identified entry are NAFTA eligible.

19 U.S.C. § 1401(s) indicates that ". . . [a] reconciliation is treated as an entry for purposes of liquidation, reliquidation, recordkeeping, and protest." Thus, the reconciliation is liquidated by CBP pursuant to 19 U.S.C. § 1500(d). If NAFTA eligibility is claimed and CBP agrees, CBP liquidates the reconciliation entry with benefit of NAFTA and issues a refund. If CBP does not agree, it liquidates the reconciliation entry without benefit of NAFTA. The liquidation of the reconciliation entry may then be protested pursuant to 19 U.S.C. § 1514(a)(5), and, if necessary, reliquidated by CBP.

In addition, reconciliation-related forms and documents, such as the NAFTA CO, are considered "entry records" under the recordkeeping laws and their presentation may be waived at the time of filing the reconciliation entry. Specifically, the recordkeeping requirements of 19 U.S.C. § 1508(a), requiring importers and certain other parties to ". . . make, keep, and render for examination and inspection records (which for purposes of this section include but are not limited to, statements, declarations, documents and electronically generated or machine readable data) . . ." apply to reconciliation entries and their supporting records and documentation. Moreover, pursuant to 19 U.S.C. § 1484 and 19 U.S.C. § 1509(a)(1)(A), Customs has the authority to waive presentation of entry records otherwise required at the time of filing an entry. This waiver authority applies to both regular and reconciliation entries. (*See* description of "reconciliation" in 19 U.S.C. § 1401(s), discussed supra, as an entry for recordkeeping and liquidation purposes.). In accordance with the statute, see 19 U.S.C. § 1509(e), CBP has listed the required "entry records," the presentation of which may be waived, in the Appendix to Part 163 of the Customs regulations, headed "Interim (a)(1)(A) List." The NAFTA CO is included in this list. Thus, a NAFTA CO is considered an entry document and its submission at the time of filing the reconciliation entry may be waived. However, as an entry record, the NAFTA CO can later be demanded by CBP; furthermore, if CBP wishes to review the CO and the importer does not produce it, the importer is subject to penalties and the reconciliation entry is subject to reliquidation. *See* 19 U.S.C. § 1509(a)(1)(B) and § 1509(g).

Likewise, CBP's Federal Register Notice establishing the reconciliation program clearly states that a NAFTA CO is an entry record the presentation of which may be waived by CBP at the time of filing a reconciliation entry. *See* 63 FR 6257, 6259 ("The Certificate of Origin is part of the a1A list . . . and covered by the record-keeping provisions of the Customs laws . . ."). Accordingly, CBP waives the presentation of the paper NAFTA CO at the time of the filing of a reconciliation entry. This ensures the reconciliation process is fully electronic, as required by 19 U.S.C. 1401(s), relieving an importer from the burden of submitting thousands of paper COs with a single reconciliation entry, while allowing CBP to process the reconciliation entry much more efficiently in a fully automated environment.

In light of the above, we maintain that the waiver of the submission of the CO in the context of reconciliation - which itself is recognized as an "entry" - is

based upon the authority given to CBP in the National Customs Automation Program, as well as the entry filing and recordkeeping statutes cited above. These statutes authorize the agency to excuse the presentation of COs (as well as other entry-related documents) at the time of entry (or reconciliation), with the caveat that Customs may later demand these documents which are required to be retained by the importer. In addition, this waiver of the presentation of documents is subject to the safeguards that failure to present the documents when demanded by Customs at a later date may result in the imposition of recordkeeping penalties and/ or the liquidation or reliquidation of the involved entries without benefit of NAFTA irrespective of the usual time frames for taking such action provided by other statutes. The waiver of the presentation of the CO in connection with NAFTA reconciliation is not based on Customs' determination regarding the NAFTA eligibility of the particular goods in issue, but on a general policy determination, as reflected in the aforementioned statutes, that the entry process should be automated and streamlined.

By contrast and as recognized by the CAFC, *Ford Motor Co.*, 715 F.3d at 909-910 (cited *supra*), Customs' authority to waive possession (and thus also presentation) of COs in the context of § 1520(d) claims, as exercised in 19 C.F.R. § 181.22(d), is based solely on the waiver authority provided by the Agreement. The above-cited statutes pertaining to entry and/or entry recordkeeping requirements provide no basis for, nor are otherwise relevant to, waivers provided in connection with such § 1520(d) claims. It thus follows that Customs' determinations regarding the waiver of possession of COs in connection with § 1520(d) claims, of the kind at issue in the instant case, represent Customs' only interpretation of that statute. Such determinations are independent and separate from its waiver of only the presentation of COs in the context of NAFTA claims made at the time of filing a reconciliation entry, which are based on the entry and recordkeeping statutes underlying the reconciliation program.

In addition, Customs [sic] broad exercise of its waiver authority in the context of reconciliation is reasonable in light of the statutory safeguards in place allowing the agency to later audit the importer and, if warranted, deny NAFTA eligibility, reliquidate the entries without favorable duty treatment, and/ or otherwise penalize the importer for failure to provide CO certificates upon request by Customs. See discussion of 19 U.S.C. § 1509, *supra*. Because Customs has the ability to reverse its initial acceptance of an importer's reconciliation NAFTA claim pursuant to 19 U.S.C. § 1509, it is willing to waive presentation of the CO at the time of the filing of the NAFTA reconciliation claim. In short, Customs' ability to reliquidate entries and penalize importers whose goods are not NAFTA eligible in the context of reconciliation reasonably explains Customs willingness to grant an across the board waiver of the presentation of the CO for NAFTA reconciliation claims. However, all of these same safeguards are not available to Customs once it issues a CO waiver pursuant to section 181.22(d) of the Customs regulations (e.g., the agency cannot assess a penalty for failure to provide the CO if it has previously waived the requirement that the CO be in the importer's

>   possession). It is thus understandable that such waivers are not as readily granted in the context of § 1520(d) claims.
>           Finally, we note that the above-described statutes, as implemented by Customs, currently provide three opportunities for an importer to assert a NAFTA claim: 1) at the time of filing the original entry, 2) at reconciliation, provided that the original entry was flagged for reconciliation, or 3) via a § 1520(d) claim. The availability of all three methods undoubtedly inures to the benefit of importers. Likewise, each vehicle provides Customs with an opportunity to ensure that NAFTA is properly applied to the claimed goods, either by requiring that a CO be presented, by requiring that the CO be retained by the importer for subsequent review, or by requiring that a port director be otherwise satisfied that the goods that are the subject of the claim are NAFTA eligible. All of these claim mechanisms fairly and properly implement the Agreement, and should not be negated.

*Remand Results* at 1-6 (footnotes omitted).

Accordingly, Customs maintains that its interpretation of § 1520(d) represents a permissible construction of the statute. More specifically, Customs explains that waiver under § 1520(d) is separate and distinct from waiver under the Reconciliation Program. Customs states that waiver under § 1520(d) applies to traditional post-importation claims under NAFTA. According to Customs, these types of claims are not treated as entries and therefore do not have certain statutory safeguards to remedy mistakes and misconduct in awarding duty free treatment under NAFTA. Customs explains that a claim for waiver under the Reconciliation Program implicates a different statutory scheme. According to Customs, claims made pursuant to the Reconciliation Program are treated as entries and therefore have a set of statutory safeguards that permit Customs to remedy mistakes and misconduct in awarding duty free treatment under NAFTA. Therefore, Customs contends that its waiver authority under § 1520(d) must be viewed within the context of these two separate mechanisms for filing post-importation claims under NAFTA.

Ford, however, claims that Customs is "clearly wrong in its belief that its CO filing waiver authority under the Reconciliation Program stems from a wholly different set of statutes than the NAFTA and 19 U.S.C. §1520(d)." *Ford Comments on Custom's Remand Report*, Docket Entry No. 110 at 3 (Dec. 18, 2013) (quotation marks omitted) ("*Ford Comments*"). Ford disputes Customs' account of the safeguards available solely in the reconciliation context. *Id.* at 14-16. Ford maintains that the safeguards available to Customs are the same regardless of whether the claim was made pursuant to the Reconciliation Program or through the traditional process. Ford argues that the *Remand Report* fails to articulate a reasonable explanation for treating the two classes of NAFTA post-importation claims differently under § 1520(d). The court disagrees.

Customs has provided a reasonable explanation for treating claims under § 1520(d) differently for purposes of "waiver". Article 503(c) of NAFTA establishes Customs' waiver authority and provides that "[e]ach Party shall provide that a Certificate of Origin shall not be required for ... an importation of a good for which the Party into whose territory the good is imported has waived the requirement for a Certificate of Origin." *Ford Motor Co. v. United States*, 635 F.3d 550, 555 (Fed. Cir. 2011). Although Congress did not reference "waiver" in § 1520(d), it is "obvious that § 1520(d) was designed in part to permit the implementation of Article 503(c)'s waiver authority via Customs' regulations." *Id.* Customs, in turn, has promulgated a regulation implementing its waiver authority. *See* 19 C.F.R. § 181.22(d)(1). The regulation permits Customs to waive "possession" of a CO when an importer files a traditional post-importation claim, provided that the "port director has in writing waived the requirement for a Certificate of Origin because the port director is otherwise satisfied that the good qualifies for

preferential tariff treatment under the NAFTA." *Id.* The language of the regulation talks about "possession," not presentment or other language suggesting that the importer retain the document for future inspection. Waiving possession is different from waiving presentment. Customs explains, and the court agrees, that waiving possession is irreversible. *See Remand Results* at 6. Customs cannot ask an importer to later produce a CO if it has already excused the importer from "possessing" that very document. Therefore, the port director is given discretion to grant or deny an importer's request for a waiver of the CO requirement.

Under the Reconciliation Program, however, Customs has waived the requirement that importers "present" COs at the time of filing a post-importation claim. *See Automated Commercial System (ACS) Reconciliation Prototype: A Guide to Compliance, Version 4.0*, Docket Entry No. 110 Exhibit No. 11 at 12 (Dec. 18, 2013) ("*Guide*"). This permits importers to bypass the step of presenting hard copies to the port director and allows the program to be administered electronically. Importers who file post-importation claims through the Reconciliation Program are required to retain the COs in the event that Customs decides to verify the correctness of their entry records. *See* 19 U.S.C. § 1508(a). The procedures that guide Customs if it does need to verify such information are specifically provided for under 19 U.S.C. § 1509. These statutes control Customs' administration of reconciliation-based post-importation claims because a claim itself under the program is treated as an "entry" under 19 U.S.C. § 1401(s). As Customs explained, this implicates a specific set of statutory safeguards for ensuring the correctness of those entries and remedying any potential misconduct by importers. The record keeping requirements and auditing procedures give Customs well-defined procedures for ensuring the correctness of entries made through the fully automated Reconciliation Program.

Ford, for its part, suggests that the safeguards available to Customs are the same for traditional and reconciliation-based claims. It relies on 19 C.F.R. § 181.81, which states

> Except as otherwise provided in § 181.82 of this part, all criminal, civil or administrative penalties which may be imposed on U.S. importers, exporters and producers for violations of the Customs and related laws and regulations shall also apply to U.S. importers, exporters and producers for violations of the laws and regulations relating to the NAFTA.

The court, though, cannot adopt Ford's formulation of the safeguards regime that applies to traditional claims. Although the regulation does provide Customs with certain remedies related to NAFTA, those potential remedies are associated with assigning penalties and do not establish a clear set of guidelines for ensuring the correctness of documents that were initially waived. Ford argues that the regulation gives Customs the "full panoply of claim validation, audit, investigation and sanction authority that it has for all other Customs violations." *Ford Comments* at 15. But 19 C.F.R. § 181.81 refers to "penalties" and does not reference the full set of record keeping and auditing procedures set forth under §§ 1508(a) and 1509. The court cannot assume that those procedures are also covered by the regulation. This becomes even more problematic when considering that the port director waives "possession" of the CO, not just presentment. An importer would have a valid defense to any request by Customs to produce a CO if the port director had already waived possession of that document beforehand.

Ultimately, Customs' waiver authority under § 1520(d) must be viewed within the context of two distinct programs for processing post-importation refund claims under NAFTA. The court notes that Customs has not always provided importers the clearest guidance on this issue and has referenced § 1520(d) when discussing the Reconciliation Program, which implies that "waiver" is the same whether the claim was made through reconciliation or not. *See, e.g.*,

*Guide* at 20. On remand, though, Customs has explained that there are two separate statutory schemes that cover post-importation claims under NAFTA. *Remand Results* at 3-6. More specifically, Customs has explained that its waiver authority under the traditional method of filing post-importation claims is controlled by § 1520(d). It has also explained that its waiver authority under the Reconciliation Program is controlled by 19 U.S.C. §§ 1484(d)(1) and 1509(a)(1)(A). Therefore, Customs takes exception to the entire premise of the remand and takes the stance that waiver under § 1520(d) is limited to traditional claims only.

  Although § 1520(d) may establish Customs' waiver authority in general, it does not control the actual process of waiver with respect to reconciliation-based claims. It is clear that reconciliation claims operate under a different framework that is specifically tailored for the electronic processing of the post-importation claims.[3] The same cannot be said for traditional claims. They operate under the procedures set forth in 19 C.F.R. § 181.22. There are legitimate reasons for applying waiver differently depending on the type of claim. Under these circumstances it is reasonable for Customs to treat the two types of post-importation claim filing

---

[3] The Reconciliation Program itself was the result of years of discussions among the various international trade actors responding to a long recognized need for procedures to acknowledge the manner in which world trade had changed. The number of suppliers and countries of origin made it difficult, if not impossible, for importers to provide complete information to Customs within the time frames provided by the original trade statutes and regulations. Importers and the government were bent on changing these to the benefit of both. The entry process needed to encompass certain flexibilities to allow for information to be provided when it was available pursuant to reasonable commercial practices. This, in turn, required an automated procedure to accomplish these goals. The Reconciliation Program is the automated system created to reach this end and even address problems caused by numerous "special arrangements" to make previously indeterminable final adjustments to import prices. *Guide* at 4. "[T]hese local, informal versions of 'reconciliation' were problematic because they varied a great deal from place to place, often had no legal basis, and lacked adequate financial controls." *Id.* (quotation marks in original). The Reconciliation Program represents a method of filing a NAFTA post-importation refund claim which is "*separate from, but coexists with,* the procedures described above for obtaining refunds under § 1520(d)." *Ford*, 715 F.3d at 910 (emphasis added).

Court No. 03-00115                                                                                                      Page 13

processes differently with regard to waiving the CO presentment requirement and the court has no hesitation in affirming the disparate treatment here.

Moreover, the interpretation advanced by Ford would effectively remove discretion expressly provided to the port director to grant or deny waiver under the traditional process for filing NAFTA post-importation claims.  The court cannot endorse this interpretation.  The statute gives Customs a good deal of discretion to define the scope of its waiver authority.  Customs has exercised that discretion by promulgating a regulation that gives the port director authority to waive possession of the CO.  *See* 19 C.F.R. § 181.22(d)(1).  At some point, Customs may abandon this policy in favor of a fully centralized program that eliminates the inconsistencies associated with relying on the port director to make determinations about waiver.  Under the current regime, however, there are legitimate reasons for treating claims differently for purposes of waiver.  Therefore, Customs' explanation for treating claims under § 1520(d) differently for purposes of waiver constitutes a permissible construction of the statute.

## IV. CONCLUSION

For the foregoing reasons, Customs' *Remand Results* are sustained.  Judgment will be entered accordingly.

Dated: May 9 , 2014                                                                      /s/ Judith M. Barzilay
      New York, NY                                                                Judith M. Barzilay, Senior Judge